# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

KENNETH FORD,

      Petitioner,

v.                             Case No. 3:15-cv-750-TJC-JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## ORDER

## I.    Status

Petitioner, an inmate of the Florida penal system, is proceeding on a pro se Amended Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 filed on May 16, 2019 (mailbox rule). See Doc. 19. He challenges a state court (Columbia County, Florida) judgment of conviction for second degree murder and first degree arson for which he is serving life imprisonment. Id. Respondents filed a Response with exhibits. See Doc. 20.[1] Petitioner filed a Reply. See Doc. 24. This case is ripe for review.

_____

[1] Attached to the Response are numerous exhibits. See Docs. 20-1 to 20-15. The Court cites to the exhibits as "Resp. Ex."

## II.    Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or

> argued to the state supreme court or obvious in the
> record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a

federal court cannot grant habeas relief unless the state court's adjudication of

the claim was "contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United

States," or "was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1),

(2). A state court's factual findings are "presumed to be correct" unless rebutted

"by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for
> evaluating state court rulings" and "demands that
> state-court decisions be given the benefit of the doubt."
> Renico v. Lett, 559 U.S. 766, 773 (2010) (internal
> quotation marks omitted). "A state court's
> determination that a claim lacks merit precludes
> federal habeas relief so long as fairminded jurists could
> disagree on the correctness of the state court's
> decision." Richter, 562 U.S. at 101 (internal quotation
> marks omitted). "It bears repeating that even a strong
> case for relief does not mean the state court's contrary
> conclusion was unreasonable." Id. [at 102] (citing
> Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The
> Supreme Court has repeatedly instructed lower federal
> courts that an unreasonable application of law requires
> more than mere error or even clear error. See, e.g.,
> Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer,
> 538 U.S. at 75 ("The gloss of clear error fails to give
> proper deference to state courts by conflating error
> (even clear error) with unreasonableness."); Williams v.

Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

### B. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); Strickland v. Washington, 466 U.S. 668, 687 (1984)). Courts employ a two-part test when reviewing ineffective assistance of counsel claims. See Strickland, 466 U.S. at 687.

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id. at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine

confidence in the outcome." <u>Id.</u> at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u> at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u> at 687.

<u>Richter</u>, 562 U.S. at 104 (internal citations modified).[2]

There is no "iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward v. Hall</u>, 592 F.3d 1144, 1163 (11th Cir. 2010). Both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation; thus, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

---

[2] This two-part <u>Strickland</u> standard also governs a claim of ineffective assistance of appellate counsel. <u>Overstreet v. Warden</u>, 811 F.3d 1283, 1287 (11th Cir. 2016). "Appellate counsel has no duty to raise every non-frivolous issue and may reasonably weed out weaker (albeit meritorious) arguments. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." <u>Id.</u> (internal quotations and citations omitted). To satisfy the prejudice prong, a petitioner must show a reasonable probability that "but for the deficient performance, the outcome of the appeal would have been different." <u>Black v. United States</u>, 373 F.3d 1140, 1142 (11th Cir. 2004); <u>see also</u> <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264-65 (11th Cir. 2009) (prejudice results only if "the neglected claim would have a reasonable probability of success on appeal")

A state court's adjudication of an ineffectiveness claim is afforded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, 562 U.S. at 105. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at 105.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014) (internal citations modified). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

### III.  <u>Analysis</u>

Petitioner's allegations in each ground are not a model of clarity. However, in each ground, Petitioner cites and refers to specific claims he raised in his direct appeal, Rule 3.850 proceeding, and ineffective assistance of appellate counsel proceeding. Given his citations to those claims previously raised in the state courts, this Court assumes Petitioner is attempting to raise the same claims here.

### A. Ground One

Petitioner argues that his trial counsel was ineffective during the January 20, 2011 hearing on Petitioner's motions to suppress. Doc. 19 at 7. He asserts that his counsel "fail[ed] to object to the court not being able to view incriminating video evidence, and that counsel made unprofessional and damaging remarks about this video recording." Id. at 8. He further argues that counsel failed to use Detective Williams' statement—"obviously you know what we want to talk to you about is what happened at the house there"—to show that Williams' stated reasons for reinitiating contact with Petitioner after he invoked his right to counsel were a pretext, and "[c]ounsel deprived Petitioner of his 6th Amendment right to confront [Williams] with his statement of 'what happened at the house.'" Id. at 8-9 (emphasis omitted). Additionally, Petitioner contends that his appellate counsel was ineffective for failing to raise these issues. Id. at 9. Petitioner references claim 1 on his direct appeal; claims 5, 7,

and 10 from his state court amended Rule 3.850 motion; and issues 1 and 2 from his petition raising ineffective assistance of appellate counsel claims. Id. at 7-9.

Before trial, Petitioner's counsel filed three motions to suppress various statements made by Petitioner. On January 20, 2011, the trial court held a hearing on the motions, and on February 2, 2011, the court entered an order granting in part and denying in part Petitioner's requests. See Resp. Ex. B at 253-56. In the order, the court classified Petitioner's statements as follows: "Statement A: Polk County, Florida interview (June 8th) – where Ford was held on a violation of pretrial release; Statement B: in police vehicle on trip from Polk County to Columbia County, Florida (June 8th, afternoon); Statement C – at Columbia County Jail (June 9th)." Id. at 253.[3] The court further divided Statement C into two parts: "C-1 (regarding the contents of Ford's vehicle); and C-2 (about the burning of the mobile home/setting of the fire)." Id. at 254. The trial court ultimately denied Petitioner's request as to Statement A, finding that Petitioner's statement—"not talking to ya'll no more"—was a "very brief phrase in the midst of two/three people talking [and] was very hard to hear, and was not clear, unequivocal." Id. Additionally, the court noted that Petitioner had been given appropriate Miranda[4] warnings, and his "actions (continuing to talk

---

[3] The state conceded the impropriety of Statement B, and the trial court granted Petitioner's request to suppress Statement B. See Resp. Ex. B at 253.

[4] Miranda v. Arizona, 384 U.S. 436 (1966).

freely almost immediately after the phrase) were totally inconsistent with any invocation of [his] right to remain silent, right to counsel, etc." Id. Regarding Statement C, the trial court reasoned:

> C-1 was a very brief discussion when Mr. Ford was in the Columbia County Jail. It occurred after a search warrant for Mr. Ford's vehicle had been signed by a judge, after the search warrant had been read to Mr. Ford in the jail; and after the deputies searching the car saw items inside which appeared to be potentially incendiary, hazardous, dangerous, and/or explosive; and were similar to items they had seen in the manufacture of methamphetamine. The vehicle was in close proximity to the jail, and posed an immediate potential danger to officers, employees, and/or persons incarcerated.

> Statement C-1 involved an officer approaching Mr. Ford only about the hazardous substance(s) in the vehicle. The defendant confirmed the bottles were used for making a kind of methamphetamine [Ford had earlier discussed with these officers meth-making of a type he called "shake-n-bake"]. As a result of the officer's observations, and Mr. Ford's confirmation(s) - the vehicle was rolled/pushed away from the jail, a federal D.E.A. unit was brought on-site, hazardous materials (haz-mat) procedures including full-body suits for safety were used. Without doubt, the officers had every reason to believe (probable cause to believe) an exigent/imminent circumstance/danger existed, and public safety [including incarcerated citizens who had no ability to voluntarily leave] was threatened. Statement C-1 is admissible on one or more basis, including under the public safety exception (N.Y. vs. Quarles, 104 S.Ct. 2626 (1984) and its progeny[]).

> During the very brief, focused C-1 statement, Mr. Ford brought up to Detective Williams -

unprompted - that he wanted to discuss other matters with the authorities (paraphrase: ... I want to talk to you, straighten this other out... ). Detective Williams told Mr. Ford to wait, they had to deal with the safety issue. Detective Williams informed other officers (Nydam, Lussier) of Mr. Ford's desire to speak with them without an attorney, and proceeded to interview him. This is statement C-2. Once again, Mr. Ford was very talkative, anxious to speak, and even recited part/most of the standard <u>Miranda</u> warnings to the officers as they gave the warnings to him.

Later on in the C-2 statement, Mr. Ford says: he wants a lawyer ... will not answer another question (paraphrase). Questioning ceased, but even then Mr. Ford continues to say more[] like: I'll talk to you, but ... guys in weeds did that shit (paraphrase). The statement C-2 Motion to Suppress is likewise DENIED.

Resp. Ex. B at 254-56.

Subsequently, on January 22, 2013, the trial court entered the following order regarding Statement C-2:

This matter came before the Court for hearing on May 21, 2012 on Defendant's Motion to suppress statements obtained July 9, 2009 at the Columbia County Jail. Pursuant to the agreed upon disposition of the motion as announced in open court with the Defendant present it is ORDERED and ADJUDGED as follows:

1. The motion is granted to the extent that any and all statements given by Defendant to law enforcement at the Columbia County Jail prior to defendant being advised of his <u>Miranda</u> rights are suppressed. The suppressed statements are more specifically identified as those statements appearing in the transcript of

10

the statement filed herein on June 6, 2012 beginning at page 4, line 17 through page 13, line 2.

2. The motion is denied as to the remaining portions of the statement which are those statements beginning at page 1, line 1 through page 4 line 16 and beginning on page 13, line 3 to the end of said transcript.

Resp. Ex. C at 497-98.

On direct appeal, Petitioner, through counsel, filed an initial brief raising as the only issue whether the trial court erred in denying Petitioner's motions to suppress statements A and C. Resp. Ex. T. The state filed an answer brief, Resp. Ex. U, and Petitioner filed a counseled reply, Resp. Ex. V. The First District Court of Appeal per curiam affirmed without issuing a written opinion and denied Petitioner's motion for rehearing. Resp. Ex. W; see Ford v. State of Florida, No. 1D13-1209 (Fla. 1st DCA).

Petitioner subsequently filed an amended Rule 3.850 motion, in which he claimed that his trial counsel was ineffective with respect to the suppression issues (grounds 5, 7, and 10). The postconviction court denied the claims, finding as follows:

GROUND FIVE . . .

The Defendant alleges that his trial counsel was ineffective because he should have moved for rehearing on the trial court's suppression order because the trial court allegedly "mixed statements made in 'A' into it[]s denial of statement 'C-2'." The

11

Defendant further alleges that the trial court paraphrased from statement "A" rather than "C-2" in its denial to suppress statement "C-2."

On December 17, 2010, the Defendant's trial counsel filed three separate motions to suppress statements made to law enforcement on June 8-9, 2009. The trial court held a hearing on these motions to suppress on January 20, 2011; for reasons unknown to the undersigned, this hearing was not transcribed.[5] On February 2, 2011, the trial court judge, in his order, labeled the various statements using the letters A-C, the Statement C had two sub-parts. The trial court denied the suppression of Statements "A," "C-1," and "C-2," and based upon the State's concession, granted the motion to suppress Statement "B."

The underlying claims, that "the trial judge erred in denying the defense motion to suppress [the Defendant]'s statement to the police on June 9, 2009," was raised on direct appeal. In this lengthy brief, the Defendant's appellate counsel argued why the trial court erred in admitting the statements that trial counsel sought to suppress. However, the Defendant's appeal on this issue—and any other issues—was unsuccessful, as the First District issued a *per curiam* affirmed opinion in 2014. Therefore, this argument clearly lacks merit, and "[t]rial counsel cannot be ineffective for failing to pursue meritless arguments." Accordingly, Ground Five is denied.

. . . .

GROUND SEVEN . . .

The Defendant alleges that his trial counsel should have made a "meaningful" argument concerning suppression of the June 9, 2009, interview

---

[5] The transcript of this hearing was filed at Resp. Ex. F.

with law enforcement. He claims that law enforcement inquired about what occurred at the crime scene rather than focusing on the potential safety issue, which is in violation of New York v. Quarles, 467 U.S. 649 (1984). As a result, such statements should have been suppressed. This claim, like the other grounds in the instant motion, is poorly written and difficult to understand. However, it appears that the Defendant contends that law enforcement used the safety issue (the methamphetamine lab) as a pretext for inquiring about the arson and homicide. He also argues that law enforcement ignored the Defendant's request for counsel and "deliberately delayed giving Miranda, not for safety but to induce [the Defendant]'s cooparation [sic] in the ingoing [sic] investigation of the fire."

The Defendant specifically challenges the statement made by law enforcement that sought to change the topic from the safety concern to the investigation: "Obviously you know what we want to talk to you about is what happened at the house there." This exact quote appears in an interview with law enforcement that occurred on June[] 9, 2009, the transcript of which was filed with the Columbia County Clerk of the Court on June 6, 2012 [(Statement C-2)]. Per the trial court's "Order on Motion to Suppress Statement Obtained July 9, 2009 at Columbia County Jail," a significant portion of this interview was suppressed. In fact, the suppression began with the line immediately following this statement by law enforcement and continued until the Defendant was reminded of his Miranda rights at page 13, lines 3 through 10. Moreover, an even more limited version of this transcript was admitted at trial, whereby nothing preceding the reminder of the Defendant's Miranda rights was admitted. Therefore, any and all of the statements made after the statement by law enforcement that the Defendant challenges, until the Defendant was reminded of his Miranda rights, was not used at trial. Accordingly, trial counsel cannot be ineffective for failing to make a meaningful

argument to suppress this because it was not admitted at trial, and much of it was, in fact, suppressed. As such, there certainly was no prejudice. Ground Seven is denied.

. . . .

GROUND TEN . . .

The Defendant, in addition to the claim contained in the subheading, raises additional allegations, many of which were previously addressed. These will be addressed with this court's analysis and findings below.

In the subheading, the Defendant claims that his trial counsel admitted that there was another case that was more important than the Defendant's. The Defendant somewhat misstates or inaccurately recalls what occurred at the March 12, 2012, hearing. First, the hearing was held as a result of the Defendant's pro se motion seeking additional counsel. In response, the Defendant's trial counsel explained that he had just resolved the prior case that he was "almost obsessed with" and that his office would now be focusing on the Defendant's case:

Very briefly, Your Honor. I really wish I got along as well with all my clients as Kenneth and I do. And, you know, he's expressed his -- and since, and, you know, I've made him aware of this, since about August we have been shorthanded down in our office. We're up to full speed right now and I just resolved a case that I was almost obsessed with. It's over with now. And some time has freed up, we have gotten some people that are wanting to get involved in this case in our office, I plan on bringing them in. Because quite frankly for two reasons, obviously, yes, it is better to have two heads than one, and, secondly, we are in the process of

trying to get some more people qualified to these type cases. So, it's going to be a mutually beneficial relationship there because we're going to get one and maybe two more lawyers involved in this case. And I think that helps us out and it will give Mr. Ford, hopefully, the comfort of what he wants. Now, I will point out that we're not going to have one lawyer tagging around with the other one just so there will be two heads there. So, you know, I'll be handling still all the preliminary court proceedings and things of that nature. But, as far as finishing up, we're fairly close to finishing up the mitigation investigation and things of that nature. Yeah, there will be other lawyers involved in that. Oh, yes, sir, there will be other lawyers involved in that.

This transcript further illustrates that the Defendant's case was a priority and that additional, qualified attorneys would be working on this case. Therefore, the Defendant's trial counsel did not indicate, in open court, that the Defendant's case was less important than others. To the contrary, trial counsel explained that additional attorneys would be brought on to work on this capital case. Accordingly, the Defendant's allegation is refuted by the record and meritless.

The Defendant also raises four brief allegations of ineffective assistance of counsel in the body of this ground: (1) trial counsel withheld the video evidence, which allegedly forced the Defendant to accept the agreement regarding suppression of part of the interview; (2) trial counsel withheld the transcripts and misled the Defendant about the content of the statements, which ultimately left the most damaging portion of the interview in evidence, and prevented the Defendant from having an opportunity to testify; (3) trial counsel, in private, allegedly told the Defendant that his future election was at stake and that the Defendant was "just going to have to fight it out in the

appeals court"; and (4) trial counsel mentioned that the Defendant[] had confessed and indicated that the Defendant's claim regarding another person being at or around his house was unbelievable.

The first two allegations, concerning the suppression of his confession, have been extensively discussed in this order. This Court has previously found that trial counsel's conduct regarding suppression of the Defendant's interview with law enforcement was not ineffective because he successfully got a major portion of that interview suppressed and that no prejudice resulted because the only portion used was that which occurred after the Defendant was reminded of his <u>Miranda</u> rights. It is not his trial counsel's fault or the result of his action or inaction that the most damning portion of the Defendant's interview came after the Defendant was reminded of his rights yet continued to discuss this matter and confess to law enforcement. Moreover, the Defendant's potential testimony at the suppression hearing would not have altered the outcome as the State only used a portion of the interview that occurred after <u>Miranda</u> warnings at trial.

The third allegation cannot be proved by the Defendant as it did not occur on the record. Nonetheless, even if this Court were to accept it as true, it does not impact what trial counsel did in open court. Thus far, the Defendant has not offered any meritorious allegation of wrongdoing or incompetence committed by his attorney during the Defendant's pretrial procedures or jury trial. Therefore, even if the Defendant's trial counsel made such an unprofessional remark to the Defendant, which this Court does not necessarily believe occurred, this alone—without actual proof of deficient performance and prejudice—is insufficient for an ineffective assistance of counsel claim.

The fourth allegation is also meritless. In his opening statement, the Defendant's trial counsel was attempting to discredit the statements that the Defendant made during the drive back from Polk County to Columbia County by showing that the Defendant was overwhelmed by the two officers and the other stimuli and events that took place:

> So then the two detectives get in a car and drive him roughly three to three and a half hours back up here to Lake City. He did make a statement there that tends to implicate him, but I think we have to put that in context again. Multiple people, they're law enforcement people with their badges and their guns.

> Let's look at sane [sic] of the other things he told them. He was being bombarded by things that were caning [sic] through his radio speakers. He was being subjected to positive and negative charges that were controlling him. He had been enveloped by sane [sic] type of spray or cloud. And there were people on the outside of his home hiding in the bushes. Hardly the statements of a rational person. Things that are quite frankly we would submit unbelievable.

Therefore, the Defendant's trial counsel did not indicate that the specific allegation that there was a person outside the Defendant's home was unbelievable. Instead, trial counsel attempted to illustrate that the Defendant's statement in its entirety was irrational and therefore incredible and should not be believed. This laid the foundation to later cast major doubt on the credibility of his confession, which trial counsel knew would be introduced as State's evidence. Accordingly, the Defendant's trial counsel was not attacking the credibility of this single statement concerning someone being at or near the Defendant's home, as the Defendant alleges. Trial counsel was merely

attempting to create a belief among the jury that the Defendant's confession in the police car was unreliable due to the attendant circumstances present at that moment.[6]

Therefore, based on the above analysis, none of the various allegations of ineffective assistance of counsel raised in Ground Ten warrant relief as the Defendant's trial counsel did not render deficient performance. Ground Ten is denied.

Resp. Ex. AA at 432-39 (internal record and case citations omitted). The First DCA per curiam affirmed the denial of Petitioner's amended Rule 3.850 motion without issuing a written opinion, Resp. Ex. DD, and subsequently denied Petitioner's request for rehearing, Resp. Ex. EE.

Relatedly, Petitioner filed a petition alleging ineffective assistance of appellate counsel. Resp. Ex. GG. He argued that the trial court erred when it used a statement made in "A" to deny suppression of statement "C-2," trial counsel failed to object to this fundamental error, and appellate counsel failed to raise it on direct appeal. See id. He also argued that "[a]ppellate counsel failed to present a meaningful argument against the denial of suppression of the statement labeled as 'C-2.'" Id. at 9. Petitioner asserted that the public safety exception was simply a pretext, Detective Williams withheld Miranda from him, and Williams provided inconsistent testimony about the location of

_____

6 It is unclear why counsel referred to the statement made in the police car, because that statement was suppressed. Counsel may have been referring to Petitioner's confession made in Statement C-2, which was admitted at trial.

18

Petitioner's vehicle during the search. The First DCA entered a per curiam opinion: "The petition alleging ineffective assistance of appellate counsel is denied on the merits." Resp. Ex. HH. Petitioner sought rehearing, which was denied. Resp. Ex. II.

Upon thorough review of the record and the applicable law, this Court concludes that the state courts' adjudications of these claims were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented. At the initial interrogation, Petitioner was advised of his <u>Miranda</u> rights and subsequently engaged in a conversation with the police (Statement A), during which he uttered what the trial court deemed a "very brief phrase in the midst of two-three people talking [and] was very hard to hear, and was not clear, unequivocal." Petitioner continued talking with the detectives thereafter, and when he subsequently invoked his right to counsel, the interrogation ceased. <u>See</u> Resp. Ex. D at 592-705.

Petitioner's statements made during the subsequent drive to Columbia County (Statement B) were suppressed. While Petitioner was being housed in the jail, the police obtained a search warrant and searched Petitioner's car, which was located in the sally port of the jail. When the police found potentially hazardous materials in the car, Detective Williams—under the public safety

19

exception—initiated a conversation with Petitioner solely about the items found in Petitioner's car (Statement C-1). During that conversation, Petitioner told Williams that he wanted to speak with police again. After handling the safety issue, Williams, Nydam (from the state attorney's office), and Petitioner engaged in another conversation (Statement C-2), at the initiation of which Williams confirmed Petitioner had previously invoked his right to counsel but subsequently said he wanted to speak with the police again. See Resp. Ex. C at 385-405. It was during this conversation that Williams said, "Obviously you know what we want to talk to you about is what happened at the house there." Id. at 388. Petitioner made some incriminating statements before Williams advised Petitioner (for the first time during the C-2 statement) of his Miranda rights. See id. at 394-97. The trial court suppressed all statements made between Williams' statement about what they actually wanted to talk about (the fire) to Williams' advising Petitioner of his Miranda rights, but denied Petitioner's request to suppress the statements he made after the Miranda warnings.[7] At trial, the only portion of the C-2 interview that was admitted into

---

[7] The trial court's initial order denying Petitioner's request to suppress statement C-2 did rely on statements made in statement A to deny suppression of statements made in statement C-2. However, the trial court subsequently entered an order suppressing all statements made between Williams' statements about what they actually wanted to talk about (the fire) and Williams' advising Petitioner of his Miranda rights. Thus, any error with respect to mixing up statements between statements A and C-2 was mooted by the subsequent order.

evidence was after Petitioner was advised of his <u>Miranda</u> rights. <u>Compare</u> Resp. Ex. C at 385-405 (transcript of complete interview), <u>with</u>, Resp. Ex. R at 723-29 (interview played at trial). Upon review, the record supports the state courts' conclusions with respect to the claims regarding the suppression of Petitioner's statements raised in Petitioner's direct appeal, Rule 3.850 proceeding, and ineffective assistance of appellate counsel proceeding. Petitioner is not entitled to federal habeas relief on Ground One.

**B. Ground Two**

Petitioner claims that his trial counsel was ineffective at the May 21, 2012 suppression hearing. Doc. 19 at 11. He claims that the postconviction court erred in relying on its denial of grounds 5 and 7 to deny grounds 10 and 11. According to Petitioner,

> [w]ithout transcripts of the May 21, 2012 hearing in the record, there's no way the state courts could have properly disputed the lack of a two-step interrogation argument claim, or counsel[']s unprofessional remark of saying he[] "didn't want to argue the motions" and counsel[']s poor judgment of "just accepting state's offers" for suppression of some non-incriminating statements. Just so he wouldn't have to argue suppression on a statement that he had previously told the court that he thought was unimportant. Counsel most definitely denied Petitioner's right to due process by doing this. Where suppression could have been obtain[ed] for the second time if counsel would have just brought up the error made in the ruling of the first suppression and argued the two-step interrogation technique.

Id. at 11-12 (internal record citation and emphasis omitted). Petitioner further argues that his appellate counsel was ineffective "as claimed in ground one" of this Petition. Id. at 12. Petitioner refers to ground 1 of his direct appeal, grounds 10 and 11 in his amended Rule 3.850 motion, and issues 1 and 2 of his petition alleging ineffective assistance of appellate counsel. Id. at 11.

As noted in Ground One supra, the First DCA entered a per curiam affirmance without written opinion on Petitioner's direct appeal, the postconviction court denied ground 10 of Petitioner's amended Rule 3.850 motion, and the First DCA per curiam denied on the merits his petition alleging ineffective assistance of appellate counsel. The record supports the state courts' adjudications of the claims raised on Petitioner's direct appeal, the DCA's per curiam affirmance of the denial of ground 10 of Petitioner's amended Rule 3.850 motion, and the DCA's denial of Petitioner's issues raised in his petition alleging ineffective assistance of appellate counsel. Thus, insofar as Petitioner raises the same claims in Ground Two as he does in Ground One, the Court denies the claims for the same reasons stated in Ground One.

The postconviction court also denied ground 11 of Petitioner's amended Rule 3.850 motion:

> GROUND ELEVEN . . .
>
> [T]he Defendant presents 34 very brief ineffective assistance of counsel allegations, which he calls "the errors and omissions of counsel." All of these "errors,"

standing alone, are insufficient as they fail to properly allege both prongs of <u>Strickland</u>. Some were previously raised and addressed:

- Errors 1 and 2 were previously addressed in Ground Ten.

- Errors 6, 8, and 23 were already addressed in Ground Nine.

Others were not previously raised at all:

- Errors 3, 7, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 24, 25, 26, 27, 28, 29, 30, 31, and 33 were not previously raised by the Defendant in this Amended Motion, and these brief sentences are insufficient to warrant relief.[]

And finally, some of the alleged errors were similar to grounds already raised:

- While Errors 4 and 32 may not have been precisely alleged earlier in this motion, this Court has thoroughly examined trial counsel's conduct with regard to the video recording and trial counsel's attempt to suppress the Defendant's recorded interview. However, even if this raised a different or additional allegation, the brief sentences describing Errors 4 and 32 are insufficient.

- Error 5, while again not specifically raised earlier in the motion, is insufficient and immaterial. The trial court had the benefit of the transcript, which the Defendant did not challenge the accuracy of. The only reason the Defendant wanted the court to observe the video was to show that it was only one file during which a hand is waved in front of the camera. This one versus two video file issue has been

discussed and found to be a nonissue repeatedly in this order.

• Errors 9 and 34[8] again challenge the Defendant's "C-2" statement and its admissibility. The admissibility and ultimate use of this statement has been addressed repeatedly in this order, specifically in Grounds Five and Seven. Errors 9 and 34 do not add any allegations that the Defendant has not previously raised.

Pursuant to Florida Rule of Criminal Procedure 3.850(f)(3)[] and given that the Defendant was already afforded an opportunity to amend, these insufficient grounds are denied.

Resp. Ex. AA at 439-40 (internal record citations and footnotes omitted). The First DCA per curiam affirmed the denial of Petitioner's amended Rule 3.850 motion without issuing a written opinion, Resp. Ex. DD, and subsequently denied Petitioner's request for rehearing, Resp. Ex. EE.

Upon thorough review of the record and the applicable law, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. The record

---

[8] In Petitioner's amended Rule. 3.850 motion, "error 34" was: "Counsel failed to put before the Court in his argument for suppression of C-2 that the police used a two-step interrogation to obtain the statement as in Seibert and Elstad." Resp. Ex. AA at 414 (formatting modified) (referring to Missouri v. Seibert, 542 U.S. 600 (2004) and Oregon v. Elstad, 470 U.S. 298 (1985)).

supports the state court's conclusion. Petitioner is not entitled to federal habeas relief on Ground Two.

## C. Ground Three

Petitioner asserts that his trial counsel was ineffective for failing to properly investigate his claims of making a 911 call on the day of the fire, and for allowing witness Jessica Milton to "mislead the jury about this 911 call." Doc. 19 at 13. He also claims that the "[s]tate withheld their recording of this 911 call" which is a violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and the state court refused to hold an evidentiary hearing which violated his rights.[9] <u>Id.</u> at 14. He refers to grounds 2 and 3 of his amended Rule 3.850 motion. <u>Id.</u> at 13.

Petitioner raised similar claims in his amended Rule 3.850 motion as grounds 2 and 3.[10] The postconviction court denied the claims, finding as follows:

---

[9] Insofar as Petitioner argues that the state court erred by failing to hold an evidentiary hearing, such a claim is not appropriately raised in a federal habeas petition. <u>See</u> <u>Spradley v. Dugger</u>, 825 F.2d 1566, 1568 (11th Cir. 1987) ("Neither the state court's failure to hold a hearing on petitioner's 3.850 motion nor its failure to attach the relevant portions of the record in any way undermines the validity of petitioner's conviction," and thus "does not state a basis for habeas relief.").

[10] Any <u>Brady</u> claim regarding the alleged 911 call record would be unexhausted as Petitioner did not raise a <u>Brady</u> claim in the state courts. Regardless, the record suggests that no 911 call record of Petitioner's alleged call exists. Petitioner attached to his postconviction motion a letter from his trial counsel explaining that counsel contacted FHP and the local 911 call center "and there is no record of [Petitioner's] call." Resp. Ex. AA at 199. Therefore, the state could not have suppressed a document or recording that does not exist.

<u>GROUND TWO</u> . . .

The Defendant alleges that he made a 911 call earlier on the day of the crime to report that someone had been lurking on his property and that such would have supported his alibi defense and provided an alternative theory as to who committed the crime.

The State, on the other hand, alleges that the CAD record submitted by the Defendant relates to "an area near I-75 and I-10 in reference to people in the median." Therefore, this record, acquired by the Defendant, does not prove anything that the Defendant claims—that it was made by the Defendant or that it shows someone was reported being in or around his yard.

This Court agrees with the State that the CAD record, submitted by the Defendant as Exhibit A,[11] does not prove what the Defendant purports. It does not identify that the Defendant was the caller, it does not concern the Defendant's property, and it does not even indicate that persons are on the private property of another, let alone the Defendant's property. Rather, it alleges that subjects are in the median acting suspicious. In no way would this bolster or support the Defendant's alibi theory contained in Ground One, which was found to be meritless. Therefore, given that the CAD record provided by the Defendant does not reflect what the Defendant alleges, this Court finds that it is not relevant and would not have been helpful in the Defendant's trial. Accordingly, trial counsel was not ineffective in failing to investigate and use the CAD record. Ground Two is also denied.

<u>GROUND THREE</u> . . .

The Defendant contends that Ms. Milton testified that no 911 call came in from the Defendant

---

[11] <u>See</u> Resp. Ex. AA at 194-96.

on June 7, 2009, and that such testimony was "misleading" because of the CAD report that the Defendant attached as Exhibit A.

The State, in its response, alleges that . . . Ms. Milton testified truthfully because there were no 911 calls where the Defendant identified himself as the caller, or that were made from the street where the crime occurred, or that complained of someone being in or on the yard of another.

This Court, having carefully reviewed the CAD report, Exhibit A, agrees with the State and finds that the 911 call to which the Defendant refers does not identify the caller, does not indicate where the call originated, and does not complain of the behavior that the Defendant alleges. Accordingly, based upon the CAD record submitted by Defendant, Ms. Milton's testimony was not untrue or misleading. Therefore, trial counsel was not ineffective, and Ground Three is denied.

Resp. Ex. AA at 431-32. The First DCA per curiam affirmed the denial of Petitioner's amended Rule 3.850 motion without issuing a written opinion, Resp. Ex. DD, and subsequently denied Petitioner's request for rehearing, Resp. Ex. EE.

Upon thorough review of the record and the applicable law, this Court concludes that the state court's adjudication of these claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Petitioner is not entitled to federal habeas relief on Ground Three.

## D. Ground Four

According to Petitioner, his trial counsel was ineffective for "allowing J.T. Williams to mislead the court." Doc. 19 at 15. Petitioner argues that his counsel should have confronted witness Williams about his prior inconsistent statement regarding the location of Petitioner's vehicle after Petitioner had been arrested. Id. Petitioner refers to ground 8 of his amended Rule 3.850 motion. Id.

Petitioner raised this claim as ground 8 in his amended Rule 3.850 motion. In denying the claim, the postconviction court reasoned as follows:

> GROUND EIGHT . . .
>
> The Defendant again challenges what occurred at the suppression hearing. The Defendant believes that his trial counsel was not paying attention, which resulted in the following alleged oversights. The Defendant believes that his trial counsel should have asked Detective Williams "wouldn't it have been counter-productive to you to even ask him about a lawyer if you were intentionally withholding Miranda and felt that his right to counsel was overridden by the safety concerns." He also alleges that Detective Williams introduced Ryan Nydam as a lawyer in an effort to continue this alleged charade. The Defendant also believes that Detective Williams could have been impeached during the suppression hearing because his earlier testimony regarding the location of the Defendant's vehicle conflicted with his suppression hearing testimony. In short, the Defendant believes that Detective Williams could have been impeached on three occasions during the suppression hearing, and this impeachment would have resulted in the confession being suppressed.

Again, as explained above, the only portion of the interview used at trial was after Detective Williams reminded the Defendant of his rights, at which point the Defendant cut off Detective Williams and said, "I have the right to remain silent. Anything I say will and can be used against me in the court of law. You know, dah, dah, dah." Detective Williams then said, "You have the right to talk to a lawyer and have him present when you're being questioned. If you cannot afford to hire a lawyer one will be appointed to represent you." And the Defendant responded, "Yes." Accordingly, the Defendant was clearly well aware of his rights prior to this reminder. And, notably, the only portion of the transcript used was what occurred after the Defendant was re-<u>Mirandized</u>.

Addressing the Defendant's specific allegations raised in this ground: first, Detective Williams could not have truly "withheld" <u>Miranda</u> from the Defendant because, as evidenced above, the Defendant was well aware of his <u>Miranda</u> rights and had been previously advised of them at earlier interviews. And none of this portion of the transcript was even used at trial.

Moreover, Detective Williams did not suggest or imply that Ryan Nydam was an attorney; rather, he simply explained that Mr. Nydam worked at the State Attorney's Office. Even if the Defendant believed that Mr. Nydam was an attorney, given his association with the State Attorney's Office, it would have been obvious that he was not there to represent the Defendant.

And finally, the Defendant is incorrect in his assertion that these "issues" combined with the discrepancy concerning the location of his vehicle would have sufficiently impeached Detective Williams so that suppression of the interview would have been warranted. The location of the vehicle was not a material issue, and such a minute detail would not have resulted in rendering Detective Williams's entire

> testimony unbelievable. Additionally, combining the
> other "issues" the Defendant raises in this ground
> would not have rendered Detective Williams's
> testimony incredible because one "issue"-Mr. Nydam
> being a lawyer-is refuted, and the other issue-that
> <u>Miranda</u> was "withheld"-is meritless. Therefore, trial
> counsel's conduct was not deficient and did not
> prejudice the Defendant's defense. Ground Eight is
> denied.

Resp. Ex. AA at 434-36 (internal record citations omitted). The First DCA per

curiam affirmed the denial of Petitioner's amended Rule 3.850 motion without

issuing a written opinion, Resp. Ex. DD, and subsequently denied Petitioner's

request for rehearing, Resp. Ex. EE.

Upon thorough review of the record and the applicable law, this Court

concludes that the state court's adjudication of these claims was not contrary to

clearly established federal law, did not involve an unreasonable application of

clearly established federal law, and was not based on an unreasonable

determination of the facts in light of the evidence presented. The Court notes

that Petitioner's assertion that Williams' deposition testimony differed from his

testimony at the suppression hearing with respect to the location of Petitioner's

vehicle is not supported by Petitioner's own filings. At the suppression hearing,

Williams testified that Petitioner's car was located in the sally port of the jail.

<u>See</u> Resp. Ex. F at 29-30. Petitioner attached to his postconviction motion an

excerpt from a deposition transcript which he purports is from Williams'

deposition. Assuming it is, Williams testified as follows:

Q. What did you do next?

A. Well, Sergeant Morgan had traveled and brought Kenneth's vehicle back up to Columbia County. The Lakeland Police Department had it secured for us, so we brought it back up here, and they secured it in the sally port of the jail, and I got a search warrant for it . . . .

. . . .

Q. Okay. Were you involved at that point in looking through the car? The car was still in the sally port at this point; correct?

A. No, I was standing back while they were doing the search, because I didn't want to get too many hands in there.

Resp. Ex. AA at 214-15. A fair reading of this transcript reflects that Williams answered, "No," to the question of whether he was involved in searching the vehicle, and Williams did not confirm that the car was still in the sally port. Thus, considering Petitioner's filings, it cannot be said that Williams gave inconsistent statements regarding the location of Petitioner's vehicle. Therefore, counsel cannot be deemed ineffective for failing to impeach Williams with his prior statement. Petitioner is not entitled to federal habeas relief on Ground Four.

Accordingly, it is

**ORDERED**:

1.     The Amended Petition (Doc. 19) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

2.     Petitioner's Motion for Leave to Conduct Discovery (Doc. 22) is **DENIED**.

3.     The **Clerk of Court** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

4.     If Petitioner appeals the denial of his Amended Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[12]

**DONE AND ORDERED** at Jacksonville, Florida, this 3rd day of May, 2021.

*Timothy J. Corrigan*
TIMOTHY J. CORRIGAN
United States District Judge

---

[12] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

JAX-3 4/9
c:
Kenneth Ford
Counsel of Record